UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| CALVIN MAYFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 3:22-cv-03200-JEH |
| ) | |
| ) | |
| MICHAEL WOODWARD, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**Order**

**I**

**A**

This cause is before the Court on Defendants' motions for summary judgment. As explained *infra*, genuine questions of fact preclude summary judgment in Defendants Michael Woodward, Justin Maher, and Troy Ham's favor, but Defendant Kaycee Peterman is entitled to summary judgment.

**B**

Plaintiff Calvin Mayfield is an inmate with the Illinois Department of Corrections (IDOC). Currently, Plaintiff is housed at the IDOC's Pinckneyville Correctional Center. However, during the time relevant to his Complaint, Plaintiff was housed at the IDOC's Western Illinois Correctional Center (Western Illinois). Also during the relevant time, Defendant Michael Woodward was a Correctional Sergeant at Western Illinois, Defendant Justin Maher was a Correctional Lieutenant at Western Illinois, and Defendant Troy Ham was a Correctional Officer at Western Illinois. Finally, Defendant Kaycee Peterman was a mental

health professional who was employed by Wexford Health Sources, Inc., and who worked at Western Illinois.

Towards the end of November 2020, Plaintiff's cellmate was Quincy Ivory. On November 24, 2020, Plaintiff spoke with Sgt. Woodward, he asked Sgt. Woodward to move either Inmate Ivory or him to another cell because he was having "issues" with Inmate Ivory. On November 25, 2020, Plaintiff had a counseling session with MHP Peterman. Sgt. Woodward was present for a portion of that counseling session. During this counseling session, Plaintiff told MHP Peterman and Sgt. Woodward that Inmate Ivory was "putting his shoes on and was ready to fight." Although MHP Peterman did not understand the significance of Inmate Ivory "putting his shoes on" until Plaintiff explained it to her, Sgt. Peterman did.

Nevertheless, neither MHP Peterman nor Sgt. Woodward took any action to separate Inmate Ivory and Plaintiff. On November 26, 2020, Inmate Ivory physically attacked Plaintiff. During the attack and in an effort to defend himself, Plaintiff killed Inmate Ivory.

Immediately thereafter, Plaintiff was held in a small room called the "library" while an investigation of the killing occurred. Lt. Maher and C/O Ham were assigned to monitor Plaintiff while the investigation occurred.

Plaintiff states that, while in the library, the restraints were placed on him in such a manner that caused him to experience pain. Specifically, Plaintiff testified that he was restrained to a stool with handcuffs behind his back and that he remained in that extremely painful position for hours. Plaintiff also testified that he experienced shoulder pain as a result of the manner in which he was restrained. Plaintiff told Lt. Maher and C/O Ham that his shoulder was hurting because of the manner in which he was restrained, but neither officer took any action to modify the manner in which Plaintiff was restrained to alleviate his pain.

Furthermore, although he repeatedly asked Lt. Maher and C/O Ham to use the restroom, neither officer would allow him to use the restroom. As a result, Plaintiff defecated and urinated on himself while he was restrained on the stool in the library.

Finally, after he was photographed and interviewed, Plaintiff was allowed to shower, and then, he was transferred to the Menard Correctional Center. The Illinois State Police and the IDOC's investigation determined that Plaintiff had killed Inmate Ivory in self-defense. Plaintiff was not issued a disciplinary ticket for the incident, nor was he criminally charged by the State of Illinois for killing Inmate Ivory.

### C

On September 28, 2022, Plaintiff filed this case, under 42 U.S.C. § 1983, alleging a violation of his Constitutional rights in November 2020 when he was an inmate at Western Illinois. On April 19, 2023, the Court granted Plaintiff's motion for leave to file an Amended Complaint. In the Order granting Plaintiff's motion for leave to file an Amended Complaint, the Court found that Plaintiff's Amended Complaint stated two claims upon which relief could be granted: (1) a failure to protect claim in violation of his Eight Amendment rights against MHP Peterman and Sgt. Michael Woodward and (2) a conditions-of-confinement claim in violation of his Eighth Amendment rights against Lt. Maher and C/O Ham.

Defendants have now moved for summary judgment on Plaintiff's claims against them. Further facts will be included *infra*, as necessary.

### II

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Ruiz-Rivera v. Moyer*, 70 F.3d 498, 500-01 (7th Cir. 1995). The moving party has the

burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183 (7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he must do more than simply show that there is some metaphysical doubt as to the material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (1986) (Brennan, J., dissenting) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III

### A

Sgt. Woodward's motion for summary judgment is denied because a reasonable jury could find in Plaintiff's favor on his claim that Sgt. Woodward violated his Eighth Amendment rights by failing to protect him from Inmate Ivory's attack on November 26, 2020. To prove his Eighth Amendment claim, Plaintiff must demonstrate that Sgt. Woodward was deliberately indifferent to a substantial risk of serious harm to him. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

"Because inmates have been deprived of the ordinary means of protecting themselves, liability in deliberate-indifference cases can be found when prison staff fail to protect a prisoner from a known danger." *Bratchett v. Braxton Envt'l Servs. Corp.*, 564 Fed Appx. 229, 233 (7th Cir. 2014) (citations omitted). "[A] prison official may be found liable only if he 'knows of and disregards an excessive risk to the inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Boyce v. Moore*, 314 F. 3d 884, 888 (7th Cir. 2002) (citing *Farmer*, 511 U.S. at 837) (additional citations omitted).

"In failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996). Specifically, the United States Court of Appeals for the Seventh Circuit has held:

> Under the Eighth Amendment, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. An inmate can prevail on a claim that a prison official failed to protect him if the official showed deliberate indifference; that is, that the defendant was subjectively aware of and disregarded a substantial risk of serious harm to the inmate. To make a guard subjectively aware of a serious risk of attack, the inmate must communicate a specific and credible danger. But even when he is aware of a substantial risk of serious harm to an inmate, a prison guard is not liable if he responds reasonably to the risk, whether or not his response ultimately prevents the harm.

*Gidarisingh v. Pollard*, 571 Fed. Appx. 467, 470 (7th Cir. July 17, 2014) (internal quotations and citations omitted). "Once prison officials know about a serious risk of harm, they have an obligation to take reasonable measures to abate it." *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (internal quotation omitted). "If prison officials are aware of a serious threat and do nothing, that is deliberate indifference." *Gidarisingh*, 571 Fed. Appx. At 471. However, "a general risk of

5

violence in a maximum-security unit does not by itself establish knowledge of a substantial risk of harm." *Shields*, 664 F.3d at 181. In short, "[i]n failure to protect cases, a prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer,* 86 F.3d 90, 92 (7th Cir.1996) (internal quotation and brackets omitted).

Sgt. Woodward argues that he is entitled to summary judgment on Plaintiff's Eighth Amendment claim against him because Plaintiff's statements to him were too vague to show that Plaintiff was in imminent physical danger and that he needed protection from Inmate Ivory. Sgt. Woodward asserts that Plaintiff merely told him that he (Plaintiff) was "having issues living together" with Inmate Ivory, and Plaintiff told him that Inmate Ivory was "difficult to get along." Sgt. Woodward contends that these statements are too vague for a reasonable person to believe that someone is in imminent physical danger such that a correctional officer would understand that he had a duty to take action to protect Plaintiff. Finally, Sgt. Woodward argues that Plaintiff has offered no evidence that he understood that the act of putting shoes on by Inmate Ivory was meant to be a threat to Plaintiff and that an attack against Plaintiff was imminent. Accordingly, Sgt. Woodward argues that he is entitled to summary judgment on Plaintiff's claim that he violated Plaintiff's Eighth Amendment rights when he failed to protect Plaintiff from Inmate Ivory's attack on November 26, 2020.

Contrary to Sgt. Woodward's argument, questions of fact preclude summary judgment in his favor. Sgt. Woodward admits that Plaintiff told him on November 24, 2020, that Plaintiff was having issues with his cellmate, Inmate Ivory. Moreover, Sgt. Woodward concedes that Plaintiff told him (Sgt. Woodward) that Inmate Ivory had put his shoes on, and Plaintiff explained to

Defendant Woodward that meant that Inmate Ivory was prepared to fight.[1] Finally, Sgt. Woodward acknowledges that, if an inmate tells him that his cell mate "puts his shoes on and is ready to fight," he would consider that a threat to that inmate's safety; that if an inmate tells him that his cell mate is threatening him with physical violence, then that inmate being threatened would be taken would investigate; and that, after hearing Plaintiff's complaint, Sgt. Woodward ordered Plaintiff to return to his cell without investigating Plaintiff's complaint against Inmate Ivory.

These facts could lead a reasonable jury to find in Plaintiff's favor. Contrary to Sgt. Woodward's argument, Plaintiff's complaint to him was not vague. *See Gevas v. McLaughlin*, 798 F.3d 475, 480–81 (7th Cir. 2015) (citations omitted) ("[A] complaint that identifies a specific, credible, and imminent risk of serious harm and identifies the prospective assailant typically will support an inference that the official to whom the complaint was communicated had actual knowledge of the risk."). On the contrary, Plaintiff complained to Sgt. Woodward, on multiple occasions, about a specific threat to his safety from a specific inmate: *i.e.*, that Inmate Ivory was preparing to physically fight him. As such, a reasonable jury could find that Plaintiff's complaints to Sgt. Woodward were sufficient to place him on notice of the threat and of his obligation to intervene on Plaintiff's behalf. *Pope*, 86 F.3d at 92. Therefore, Sgt. Woodward's motion for summary judgment is denied.

**B**

As for MHP Peterman, her situation is different. Plaintiff bases his failure to protect claim against MHP Peterman on his counseling session with her that

---

[1] In fact, Plaintiff testified during his deposition that he told Sgt. Woodward "numerous times" that Inmate Ivory was preparing to fight him. D/E 151-2 at p. 31 (p. 120 of Plaintiff's Dep.).

occurred on November 25, 2020. Plaintiff claims that MHP Peterman should have taken additional action(s) to help with because he complained to MHP Peterman about the difficulties that he was having with Inmate Ivory.

Unlike Sgt. Woodward, it is undisputed that MHP Peterman lacked the authority to move either Plaintiff or Inmate Ivory to a different cell.[2] Without the power to intervene or to take action to prevent the harm, MHP cannot be held liable for violating Plaintiff's Eighth Amendment rights by failing to protect him from Inmate Ivory's attack on November 26, 2020. *E.g., Cox v. Pickett,* 2023 WL 7389185, * 2 (E.D. Cal. Nov. 8, 2023) ("However, plaintiff fails to state a [failure to protect] claim against Valdez or Perval [because] [n]either defendant had the authority to move plaintiff to another cell . . . ."); *Perkins v. Martin*, 2016 WL 3670564, * 3 (S.D. Ill. July 11, 2016) (entering summary judgment in defendant Pind's favor on the plaintiff's failure to protect claim against him because "[t]here [wa]s no evidence in the record that Pind had the authority to move prisoners between cells.").

Furthermore, there is no evidence that MHP Peterman failed to respond reasonably to Plaintiff's complaints about Inmate Ivory. Unlike Sgt. Woodward, MHP Peterman failed to grasp the significance of another inmate putting his shoes on in a cell until Plaintiff explained the meaning to her. Although she knew that she did not have the authority to address the situation *via* a cell change, MHP Peterman heard Plaintiff re-assert his fears to Sgt. Woodward who responded that he would look into the matter. MHP Peterman also knew that Plaintiff would pass

---

[2] Plaintiff admits in his response brief that MHP Peterman's inability to relocate him to a different cell is "technically" correct, but he claims that MHP Peterman could make suggestions regarding cell assignments. Technical or not, it is undisputed that MHP Peterman could not change Plaintiff or Inmate Ivory's cell assignment.

several correctional officers on his way back to his cell with whom he could register his fear of Inmate Ivory. Finally, MHP Peterman asked Plaintiff if he was okay to leave the session and return to his cell, and Plaintiff responded that he would be fine. MHP Peterman, then, inquired with her supervisor whether she should take any further actions regarding Plaintiff's complaints about his cell mate, and MHP Peterman's supervisor advised her that she did not need to take any further actions with regard to Plaintiff's concerns with his cell mate.[3]

Based upon this undisputed evidence, a reasonable jury could not conclude that MHP Peterman acted unreasonably in response to or that she disregarded a known excessive risk to Plaintiff's health or safety. As noted *supra*, a defendant is not liable if he responds reasonably to the risk whether or not his response ultimately prevents the harm. *Gidarisingh*, 571 Fed. Appx. at 470. MHP Peterman asked Plaintiff if he was confident that he could return to his cell after their counseling session, and Plaintiff responded that he was. MHP Peterman did not have the power to reassign Plaintiff to a new cell, but she heard Plaintiff make the request to someone who had that power or could begin the reassignment process. "Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Such is the case here, and therefore, MHP Peterman is entitled to summary judgment on Plaintiff's claim that she failed to protect him from Inmate Ivory's attack on November 26, 2020, in violation of his Eighth Amendment rights.

---

[3] Plaintiff asserts that MHP Peterman should have placed him in a crisis cell, and had she done so, he would not have been attacked. What MHP Peterman could have done is not the same as acting unreasonably under the circumstances. Under these circumstances, a reasonable jury could not find that MHP Peterman violated Plaintiff's Eighth Amendment rights simply because she could have, but did not, place him into a crisis watch cell.

## C

Finally, Lt. Maher and C/O Ham are not entitled to summary judgment on Plaintiff's conditions-of-confinement claim against them. The United States Supreme Court has made clear that "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions;' it outlaws cruel and unusual 'punishments.'" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This means that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as an infliction of punishment." *Id*. at 838.

Accordingly, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. This type of deliberate indifference "implies at a minimum actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Duckworth v. Frazen*, 780 F.2d 645, 653 (7th Cir. 1985). "[M]ere negligence or even gross negligence does not constitute deliberate indifference," *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996), and it is not enough to show that a prison official merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995), *abrogated on other grounds, Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996).

Lt. Maher and C/O Ham argue that they are entitled to summary judgment on Plaintiff's Eighth Amendment claim against them because the conditions of which Plaintiff complains were not sufficiently serious to invoke the Eighth Amendment's protections. In addition, Lt. Maher and C/O Ham contend that they cannot be held liable to Plaintiff because, in refusing his requests to use the

restroom, they were simply following the orders of their superiors. Accordingly, Lt. Maher and C/O Ham ask the Court to enter summary judgment in their favor.

As for their "we were only following orders" argument, Lt. Maher and C/O Ham's argument is disputed and somewhat troubling. Suppose that the condition in which Plaintiff had found himself was not having to sit in his own waste for hours, but he had experienced chest pains and a heart attack. Would Lt. Maher and C/O Ham have simply "followed orders" rather than summon medical assistance? The Court hopes not. Regardless, Plaintiff has offered evidence that Lt. Maher did not reveal to his superiors the entirety of the situation, and that is why his superiors directed Lt. Maher and C/O Ham not to allow Plaintiff to go to the restroom.

As for Lt. Maher and C/O Ham's argument that Plaintiff's conditions of his confinement while in the library were not Constitutionally significant, the Court is unwilling to make that finding on summary judgment. In the Court's opinion, a reasonable jury could find Lt. Maher and C/O Ham liable on these facts: (1) Plaintiff had just killed someone in self-defense; (2) after being violently, physically attacked; (3) Plaintiff was, then, handcuffed for hours in such a manner that he was in pain; (4) Plaintiff was prevented from using the restroom for a prolonged period of time; (5) Plaintiff was prohibited from using the restroom for hours even though Lt Maher and C/O Ham knew that Plaintiff had taken a laxative the night before; and (6) as a result, Plaintiff defecated and urinated on himself in the presence of Lt. Maher and C/O Ham who were assigned to monitor Plaintiff so that he did not harm himself and so that an investigation could be conducted into the killing of another inmate. That factual scenario is what Plaintiff testified occurred. And these facts could support a jury's finding that Lt. Maher and C/O Ham violated Plaintiff's Eighth Amendment rights. Accordingly, Lt. Maher and C/O Ham's motion for summary judgment is denied.

**IT IS, THEREFORE, ORDERED:**

1.      Defendants Michael Woodward, Justin Maher, and Troy Ham's motion for summary judgment [151] is DENIED.

2.      Defendant Kaycee Peterman's motion for summary judgment [155] is GRANTED.

3.      Accordingly, the Court will enter judgment in Defendant Peterman's favor and against Plaintiff after Plaintiff's claims against the remaining Defendants have been resolved.

4.      This matter is referred to United States Magistrate Judge L. Ronald Hanna for the purpose of conducting a settlement conference with the remaining Parties.

*It is so ordered.*

Entered: August 26, 2025

s/Jonathan E. Hawley

U.S. District Judge